IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. |
| CATHOLIC HEALTH EAST, PITTSBURGH MERCY HEALTH SYSTEM, INC., THE MERCY HOSPITAL OF PITTSBURGH, and UPMC d/b/a UNIVERSITY OF PITTSBURGH MEDICAL CENTER, | : |
| Defendants. | : |

## COMPLAINT

The Commonwealth of Pennsylvania, through its Office of Attorney General, brings this action under the federal and state antitrust laws to block the proposed acquisition of Mercy Hospital of Pittsburgh ("MHP"), by the University of Pittsburgh Medical Center ("UPMC"). The acquisition will result in UPMC owning all but one Tertiary Care Health Care Provider in Pittsburgh.

Unless prevented, this combination is likely to substantially lessen or eliminate competition in the provision of tertiary Inpatient Acute Care hospital services, as well as the provision of medical and ancillary services associated with those hospitals. Further, this combination would reduce the number of competitive alternatives available to health care consumers and enable UPMC to raise prices with no competitive constraint, resulting in higher

1

prices for all Inpatient Acute Care hospital services in the Relevant Geographic Market. These higher prices will be borne by health care purchasers, particularly Health Plans, employers and unions, and will likely result in an increase in prices that individual consumers pay for health insurance coverage. Health Plans currently have difficulty marketing a product in Allegheny, Beaver, Butler, Fayette, Washington and Westmoreland Counties without at least some UPMC facilities in their network. Post-acquisition, a Health Plan offering a product in Allegheny, Beaver, Butler, Fayette, Washington and Westmoreland Counties will have only one choice of Tertiary Care Health Care Provider other than UPMC. UPMC's dominance in primary and secondary Acute-care Hospital services will also increase as a result of this acquisition, which will further reduce the ability to market a product without UPMC facilities.

## I. Jurisdiction and Venue

1. This Court has jurisdiction over this action pursuant to 15 U.S.C. §§ 4 and 26, and 28 U.S.C. §§ 1331 and 1337.

2. Defendants are found and transact business within this district and the claims in substantial part arise in this district. Venue is proper in the Western District of Pennsylvania under sections 12 and 16 of the Clayton Act, 15 U.S.C. §§ 22 and 26, and under 28 U.S.C. §§ 1391(b) and (c).

3. The Plaintiff also brings this action pursuant to its pendent state antitrust claims under the Pennsylvania common law doctrine against monopolies and unfair restraints of trade. Under its state claims, the Plaintiff seeks permanent injunctive relief.

4. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a). The causes of action set forth in this complaint under both the federal and state

antitrust laws derive from a common set of operative facts that raise substantially identical factual issues.

## II.     Parties

5.     The Commonwealth of Pennsylvania brings this action as <u>parens patriae</u> to protect its general economy and as a direct purchaser of hospital services from defendants through its Medicaid and Pennsylvania Employee Benefits Trust Fund programs.

6.     Catholic Health East ("CHE") means the not-for-profit, tax-exempt corporation based in Newtown Square, Pennsylvania, which is the parent corporation of a multi-institutional non-profit Catholic health system that includes a number of Acute Care hospitals and a network of other Health-Care Providers located in eleven eastern states extending from Maine to Florida, and which includes Pittsburgh Mercy Health System ("PMHS") and MHP.  CHE is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal address at 14 Campus Boulevard, Newtown Square, PA 19073.

7.     "The Mercy Hospital of Pittsburgh" ("MHP") means the not-for-profit, tax-exempt Health-Care Provider based in Pittsburgh, Pennsylvania.  MHP is a Tertiary Care hospital located in the City of Pittsburgh, and is the largest component of the PMHS System.  MHP is a major provider of health care to the poor and underserved.  MHP is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal address at 1400 Locust Street, Pittsburgh, PA  15219.

8.     "Pittsburgh Mercy Health System, Inc." ("PHMS") means the not-for-profit, tax-exempt Health-Care Provider based in Pittsburgh, Pennsylvania, including its subsidiaries, and sponsored by the Sisters of Mercy of the Americas, Regional Community of Pittsburgh.  PHMS

3

is part of the CHE system and serves as the parent corporation of a multi-institutional local Catholic health system that operates in Southwestern Pennsylvania. PMHS is the parent corporation of the MHP. PMHS is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal address at 1400 Locust Street, Pittsburgh, PA 15219.

9. "UPMC Health System" d/b/a University of Pittsburgh Medical Center ("UPMC") means the not-for-profit; tax-exempt corporation organized under the laws of the Commonwealth of Pennsylvania having its principal address at 200 Lothrop Street, Pittsburgh, PA 15213. UPMC is the corporate parent of the UPMC Hospitals, UPMC Health Plan, and other Health-Care Providers throughout Western Pennsylvania.

### III. Definitions

10. "Acquire" means to purchase the whole or the majority of the assets, stock, equity, capital, or other interest of a corporation or other business entity, or to receive the right or ability to designate or otherwise control the majority of directors or trustees of a corporation or other business entity.

11. "Acute-care Hospital" means a health care facility, licensed as a hospital, having a duly organized governing body with overall administrative and professional responsibility and an organized medical staff that provides 24-hour inpatient care as well as outpatient services and having as a primary function the provision of inpatient services for medical diagnosis, treatment and care of physically injured or sick persons with short-term or episodic health problems or infirmities.

12. "HHI" means the Herfindahl-Hirschman Index, a measure of market concentration calculated by squaring the market share of each firm competing in the market and then summing

4

the resulting numbers. For example, for a market consisting of four firms with shares of 30%, 30%, 20% and 20%, the HHI is 2,600 ($30^2 + 30^2 + 20^2 + 20^2 = 2,600$). The HHI takes into account the relative size and distribution of the firms in a market. It approaches zero when a market is occupied by a large number of firms of relatively equal size and reaches its maximum of 10,000 when a market is controlled by a single firm. The HHI increases both as the number of firms in the market decreases and as the disparity in size between those firms increases.

13. "Health-Care Provider" means any physician, hospital, clinic, laboratory or physician network.

14. "Health Plan" means all types of organized health-service purchasing programs, including, but not limited to, health insurance and managed-care plans, offered by government, for-profit or non-profit, third-party payors, health care providers or any other entity.

15. "Inpatient Acute Care" and "Acute Care" includes room and board, medical or surgical diagnostic and treatment services, around-the-clock monitoring and observation, nursing care, laboratory, x-ray and support services for physically injured or sick persons with short-term or episodic health problems or infirmities.

16. "Managed-Care Plan" means a health maintenance organization ("HMO"), preferred provider organization ("PPO") or other health-service purchasing program which uses financial or other incentives to prevent unnecessary services and includes some form of utilization review.

17. "Relevant Geographic Market" means all or parts of the counties of Allegheny, Beaver, Butler, Fayette, Washington and Westmoreland.

18. "Tertiary Care" refers to highly specialized medical care that involves advanced and complex procedures and treatments performed by medical specialists in specialized facilities. These facilities generally have access to specialized equipment and feature a residency program that allows 24 hour coverage by specialist physicians. Examples include Burn Treatment, Level 1 Trauma, Specialist Cancer Treatment, Organ Transplants and Neurosurgery.

### IV. Trade and Commerce

19. According to data published by the Pennsylvania Health Care Cost Containment Council, total net patient revenues of Mercy in 2005 were more than $260 million and total operating expenses exceeded $286 million. Total net patient revenues of UPMC facilities in the Relevant Geographic Market in 2005 were more than $2.464 billion and total operating expenses were more than $2.531 billion. Each hospital is engaged in interstate commerce and their activities are in the flow of, and substantially affect, interstate commerce.

20. The provision of Inpatient Acute Care occurs, at least in part, through various channels of interstate communication and transportation.

### V. Relevant Geographic Market

21. MHP is a not-for-profit, tax-exempt Health-Care Provider based in Pittsburgh, Pennsylvania, which is located in Allegheny County. MHP is the largest component of the PMHS, which is owned by Catholic Health East ("CHE") and provides a high-level of health care to the poor and underserved. MHP consists of a 368-bed, tertiary and general Acute Care facility. Hospitals in the surrounding counties of Beaver, Butler, Fayette, Washington and Westmoreland provide virtually no competition to the merging hospitals for Tertiary Care.

6

Allegheny General Hospital ("AGH") and Western Pennsylvania Hospital ("WPH"), tertiary and general Acute Care facilities located in Pittsburgh, Pennsylvania, in Allegheny County and operated as part of the West Penn Allegheny Health System ("WPAHS"), provide the only significant competition for Tertiary Care services to MHP and UPMC. Other hospitals in the Relevant Geographic Market do compete to provide primary and secondary Acute Care services. Less than 2% of all hospital days by persons residing in the Relevant Geographic Market occur at hospitals outside this area.

22. CHE, MHP and UPMC seek to transfer ownership of MHP through UPMC's acquisition of MHP from CHE. UPMC operates 18 hospitals throughout Western Pennsylvania, which includes its premier Tertiary Care facility, UPMC Presbyterian/Shadyside, a 1,307-bed, tertiary and general Acute Care facility located in Pittsburgh, Pennsylvania, in Allegheny County.

23. MHP and WPAHS are UPMC's only significant competitors for the provision of Tertiary Care hospital services in the Relevant Geographic Market. There are no other Tertiary Care hospitals within the Relevant Geographic Market that are not operated by UPMC. In addition to UPMC Presbyterian/Shadyside, UPMC owns Children's Hospital of Pittsburgh and Magee-Women's Hospital of Pittsburgh, which provide specialized Tertiary Care services.

24. The Relevant Geographic Market is an area that includes Allegheny County and the Counties surrounding it, Beaver, Butler, Fayette, Washington and Westmoreland. This market includes twenty-seven hospitals which served more than 95% of the total cases in the market, and 98% of the people in this market used area hospitals.

25. In the event of a significant price increase, Health Plans cannot turn to hospitals outside this Relevant Geographic Market as substitutes and continue to market a product in Allegheny, Beaver, Butler, Fayette, Washington and Westmoreland Counties.

26. Pre-acquisition, a Health Plan could offer Tertiary Care services by having MHP, WPAHS, or UPMC in its network and offer a product in the Relevant Geographic Market.

27. Health Plans cannot use hospitals outside this Relevant Geographic Market to constrain prices at hospitals in UPMC's system post acquisition.

28. Hospitals located outside this Relevant Geographic Market do not view themselves as competitors of UPMC, MHP, or WPAHS.

29. Persons residing within this Relevant Geographic Market stated they will not travel to hospitals outside the Relevant Geographic Market.

## VI. Relevant Product Market

30. MHP, WPAHS and UPMC sell Inpatient Acute Care hospital services and Tertiary Care services to a variety of purchasers, including Health Plans, such as HMOs and PPOs. Health Plans reduce health-care costs by encouraging hospitals to compete vigorously on price and quality. These plans contract with a select number of hospitals and employ financial incentives to encourage plan enrollees to use the contracted facilities.

31. Through competition for the provision of hospital services to their Health Plan, these price-sensitive health-care purchasers secure hospital services at competitive rates, which substantially contains the overall cost of hospital care. This, in turn, permits Health Plans to offer health insurance to consumers at lower prices. Health Plans constitute a significant percentage of MHP, WPAHS and UPMC's revenues from patient care.

32. The availability or non-availability of key healthcare facilities, such as hospitals, has a significant effect on the viability of a Health Plan. Access to certain hospitals is an important factor for employers choosing a Health Plan. Within the Relevant Geographic Market, many Health Plans do not have access to UPMC Presbyterian/Shadyside and are only able to cover Tertiary Care services provided at MHP and WPAHS. If this merger proceeds, it is unclear whether these Health Plans will be able to continue to include MHP in their networks beyond the term of their current contracts. The largest Health Plan in the Relevant Geographic Market does offer UPMC Tertiary Care services at UPMC Presbyterian/Shadyside, and enjoys a substantial market share advantage over the nearest competing Health Plan. Losing access to MHP will further weaken Health Plans that have been able to only secure a small percent of the Health Plan market. Access to key healthcare facilities is of similar importance to price. Control of several key facilities over a significant geographic area can provide significant leverage when negotiating with Health Plans, resulting in increased prices.

33. In addition to providing Inpatient Acute Care hospital services and Tertiary Care services, Tertiary Care hospitals also treat patients on an outpatient basis and, for those services, compete with other types of providers, such as clinics, ambulatory surgery centers and physicians' offices. Patients whose treatment or condition requires an overnight hospital stay, however, cannot be safely or effectively treated on an outpatient basis. Additionally, Tertiary Care services cannot be offered in a non Tertiary Care facility at all due to the complex nature of this level of care. For these reasons, health-care purchasers, including managed-care plans, do not view outpatient services as substitutes for Inpatient Acute Care or tertiary hospital services. Tertiary Care hospitals could profitably increase the price of Inpatient Acute Care and tertiary hospital

services without causing a significant number of health-care purchasers to switch to outpatient services.

34. The provision of Inpatient Acute Care and Tertiary Care hospital services constitutes a line of commerce, or a relevant product market, within the meaning of section 7 of the Clayton Act. 15 U.S.C. § 18.

### VII. Market Concentration

35. The market is highly concentrated by any measure of hospital capacity or output and market concentration would increase substantially as a result of the proposed combination of MHP and UPMC. The combined entity would control more than 52% of the market for acute-care services (based on certified beds), and more than 74% of the market for Tertiary Care services (based on Tertiary Care services provided in 2005). UPMC Presbyterian/Shadyside is the largest Tertiary Care hospital, AGH is the second largest Tertiary Care hospital and MHP is the third largest Tertiary Care hospital in the Relevant Geographic Market.

36. Currently, the pre- and post-acquisition hospital market shares for Inpatient Acute Care hospital services in the Relevant Geographic Market, which includes Allegheny, Beaver, Butler, Fayette, Washington and Westmoreland Counties, based on data reported to the Pennsylvania Health Care Cost Containment Council in 2005 and 2006 are as follows:

| Hospital | Acute Care Mkt. Share % | Tertiary Mkt. Share % |
|---|---|---|
| UPMC | 45.05% | 59.99% |
| MHP | 8% | 14.78% |
| **Total:** | **53.05%** | **74.77%** |

37.    The proposed merger increases concentration significantly in the Inpatient Acute Care hospital services market in the Relevant Geographic Market.  The pre-merger HHI of 2,210 already signifies a concentrated market and the merger will result in an increase in the HHI of 404 points to 2614.  An HHI of more than 1,800 indicates a concentrated market and an increase in HHI by more than 100 in an already concentrated market will presumptively increase the ability of the merged parties to exercise market power.

38.    The provision of Inpatient Acute Care and Tertiary Care hospital services is distinct from the provision of services by other types of health care facilities, such as clinics, ambulatory surgery centers, physician's offices, nursing homes or rehabilitation or psychiatric hospitals.

39.    There are no substitutes for the Inpatient Acute Care and Tertiary Care hospital services provided by Tertiary Care hospitals.

40.    In the foreseeable future, no new Tertiary Care hospital is likely to enter the Relevant Geographic Market.

41.    As new entry appears unlikely and the parties cannot justify creating a monopoly with efficiencies, the acquisition of MHP by UPMC will lessen competition and tend to create a monopoly and is illegal.

## VIII.   Count 1
## Violation of Federal Antitrust Laws

42.    As a direct result of the merger, competition for Inpatient Acute Care and Tertiary Care hospital services in the Relevant Geographic Market may be substantially lessened in the following ways, among others:

11

    A.    Existing competition and the potential for increased competition between MHP, WPAHS and UPMC for the provision of Inpatient Acute Care hospital services and Tertiary Care services in the Relevant Geographic Market will be substantially reduced;

    B.    Concentration in the relevant product market in Allegheny, Beaver, Butler, Fayette, Washington or Westmoreland Counties will be substantially increased;

    C.    The likelihood of collusion in the Relevant Geographic Market in Allegheny, Beaver, Butler, Fayette, Washington or Westmoreland Counties may be substantially increased; and

    D.    Increased concentration in Allegheny, Beaver, Butler, Fayette, Washington or Westmoreland Counties may enhance the ability of the merged entities to increase prices and decrease quality of service with little fear that such price increases and decreases in quality of service will be defeated by existing fringe competitors or new market entrants;

43.    The proposed acquisition violates section 7 of the Clayton Act, 15 U.S.C. § 18.

### IX.    Count 2
### Violation of State Common Law Doctrine Against Monopolies and Unfair Restraints of Trade

44.    Plaintiff repeats each and every preceding allegation as if fully set forth herein.

45.    The effect of the acquisition of MHP by UPMC would be to suppress or lessen competition substantially for the provision of primary, secondary and Tertiary Care services in Western Pennsylvania in violation of the Pennsylvania common law doctrine against monopolies and unfair restraints of trade.

46. This acquisition threatens loss or damage to the general welfare and economy of the Plaintiff and to the citizens of the Commonwealth of Pennsylvania. The Plaintiff and its citizens will be subject to a continuing and substantial threat of irreparable injury to the general welfare, economy and competition in the Commonwealth of Pennsylvania unless the Defendant is enjoined from finalizing the acquisition.

47. The acquisition would likely have the following effects, among others:

A. Competition in the provision of primary, secondary and Tertiary Care services in the Relevant Geographic Market would be eliminated or substantially lessened;

B. Actual and future competition between UPMC and other competitors for the provision of primary, secondary and Tertiary Care services would be eliminated or substantially lessened;

C. Prices for the provision of primary, secondary and Tertiary Care services would likely increase to levels above those prior to the acquisition;

D. Innovation and quality of the provision of primary, secondary and Tertiary Care services would likely decrease, if not disappear, below levels existing prior to the acquisition;

E. Depriving customers of the benefits of fair competition for primary, secondary and Tertiary Care services in Western Pennsylvania;

F. Enhancing UPMC's own interests at the expense of the citizens of the Commonwealth; and

G. Interfering with the interests of the public.

## X. Injury

48. Unless the violations described above are enjoined, the Commonwealth of Pennsylvania will suffer direct, immediate and irreparable damage to its general economy and as a direct purchaser of Inpatient Acute Care hospital services.

## XI. Relief Requested

WHEREFORE, plaintiff prays:

(a) That the proposed acquisition of MHP by UPMC be adjudged to be in violation of section 7 of the Clayton Act, 15 U.S.C. § 18;

(b) That the proposed acquisition of MHP by UPMC be adjudged to be in violation of the Pennsylvania common law doctrine against monopolies and unfair restraints of trade.

(b) That defendants, their parents, subsidiaries, affiliates, directors, officers, agents, successors and assigns and all others acting on their behalf, be preliminarily and permanently enjoined from taking any action directly or indirectly to consummate the proposed acquisition of MHP by UPMC;

(c) That defendants be ordered to pay plaintiff's costs and attorneys' fees; and

(d) That the Court grant such other relief as it deems appropriate.

Dated: May 25, 2007

Respectfully submitted,

Thomas W. Corbett, Jr.
Attorney General

By: _____
James A. Donahue, III
Chief Deputy Attorney General
Antitrust Section
Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-4530
(717) 705-7110 (fax)
jdonahue@attorneygeneral.gov
PA 42624

_____
Jennifer A. Thomson
Deputy Attorney General
Antitrust Section
Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-4530
(717) 705-7110 (fax)
jthomson@attorneygeneral.gov.
PA 89360

Attorneys for the Commonwealth
of Pennsylvania

JADIII/dmh/complaint1024draft.052407